221655, Amaranth, Inc. v. Papa John''s USA, Inc. On the same day, Amaranth did not agree. The District Court issued a show-cause order forcing Amaranth to litigate its claims in an atmosphere where the District Court, in its own words, telegraphed its opinion of invalidity. In the face of this reality, Amaranth still showed that Claims 4 and 5, which claim applications running on a network architecture that reduce the load on a network server, making overall processing more efficient, optimizing response time, and avoiding unevenly overloading computers and servers are patent-eligible subject matter under ALICE Step 2 through their inventive concepts of the ordered combination of a single point of entry, equilibrium, and reflective routing technology, as confirmed and supported by the claims, the specification, and the expert declaration of Dr. Valerde. Yet the District Court presumed the claims were invalid, which denied the claims their presumption of validity, and led the court to make infactual determinations... Can I just interrupt to make sure I understand? So this was set back, and you had to deal with Claims 4 and 5, which depend on law, right, for ineligibility? At the end of the day, yes. Amaranth submitted a status report at ABPX 6906 saying that it intended to assert claims that either had already been asserted or to add that were not subject to the... Okay, so what it's before the District Court then, again, is simply to adjudicate the Claims 4 and 5, though, right? At the end of the day, yes. Well, this case? No, not... So what happened was there was a status report that was submitted on November 29, 2021, at ABPX 6906. Amaranth requested that the case continue to be stayed and said that it wants to assert claims that according to this court's dominoes opinion, because Amaranth had not formally withdrawn them and there were defendants that had counterclaims, in fact, 26 of the 29 cases had counterclaims, the District Court was entitled to invalidate. So Amaranth sought to assert some of those claims, for example, Claims 4 was asserted against... I'm really confused about what you're trying to tell us. We remanded to look at 4 and 5, right? And you wanted to bring in other ones, is that what you're trying to tell us? Yes. Can we deal with these separately? But you spent a portion of your brief arguing about the merits of 4 and 5, so that's what I was just going to get to, because I thought that was a major part of this case. So the only... Well, I'd like to raise about 2 and... No, I don't want to talk about 2 and 12 yet. I want to talk about 4 and 5, because the District Court did not let you have in 2 and 12, and that's going to be an abusive discretion center. 4 and 5 is what we sent back. And you got up and gave this big pay-in to why it's, whatever, eligible for all these reasons. Tell me why, when we've already found Claim 1 ineligible and all 4 and 5 add is field limitations that they are somehow eligible when Claim 1 is not. So, with all due respect, they're not just field abuse limitations. You have to look at the claims from one of ordinary skill in the art. Okay, but everything in Claim 4 is the information management in real-time synchronous communication system in accordance with Claim 1. That's ineligible. Claim 1 was found ineligible. So all that language in 4, that portion is ineligible. So in order for Claim 4 to be eligible, the rest of the sentence has to add eligible subject matter. And it does. You have to look at the claims from one of ordinary skill in the art. And the moving defendants in claim construction said that a ticketing application had functionality that they do not have, and their proposed construction, according to them, was case dispositive. This court should not allow defendants to do what patent owners have continuously told not to do. You can't take one position... I don't care about that. Tell me why a hospitality application is eligible when the overall system is not. So, it's not just a hospitality application. Claim 4 is for reservation. It's a reservation application. And Claim 5 is for a ticketing application. In the restaurant application context, when a person seeks to reserve a table, there are all of these elements that have to be considered by the system. As Dr. Valerity discussed, the technical problems at paragraphs 51 and 54 to 58 of his declaration. And in order to be able to look for your reservation, have it go to the back end, have the back end figure out what's available, then send the information back to the front end without overloading the system. It used a single point of entry, equilibrium of the databases, and... Are you telling me that a computerized reservation system is eligible? I am telling you that in 1999, which is the date that you have to look at what existed at the time, how these claims work, and the functionality as we have the viewpoint of one ordinary school in New York, yes, absolutely. Think about it this way. In 1999, if you were on... I'm not sure why the time period matters. This is a question of law under Alice and all of those decisions. Whether Alice had issued or not in 1999 doesn't somehow transform ineligible subject matter into eligible subject matter because of the time period. If it's ineligible, it's ineligible, no matter when you... Then you're throwing out step two for the event of concept, whether there's something more to the claims than any abstract idea, and you have to look at... What's the something more? The something more is the combination of the single point of entry, equilibrium, and reflective routing technology. These claims... What does that mean? I'm trying to explain to you, Your Honor. Well, you've said those words a bunch of times. Tell me what it means. So in 1999, if you had your handheld device and you wanted to synchronize it with a computer or the back end, you had to physically plug it in, one-to-one, and there could be no updating, and the way that it would update when you plugged it in was it would move... Don't tell me how it works. Tell me what the event of concept is. I know how it works. By those elements being there with the reflective routing, it decreases the load on the network server. That allowed the server to run better. It optimized it. It would prevent servers and handheld devices that were connected to the server from crashing. So in the court's... Well, first of all, in the court's claim construction order, which is docket number 908 in case 311, CB 1810, the defendants tried to have the term reflected, incorporated into the construction of synchronized and synchronous, and the district court rejected that. So we know just from that claim construction order that reflective routing is not in Claim 1. We also know from the specification that the only time reflective routing is even mentioned deals with the restaurant reservation embodiment. So through claim differentiation, that then also tells us that Claim 1 doesn't include the reflection. So Claim 1 works differently. So in Claim 1, when there is an update to be synchronized, it would synchronize the entire database. And then Claims 4 and 5 realized because of the complexity needed in reservations and ticketing, the system could be overloaded. You could have duplicate tables or duplicate tickets being sold, which you don't want. There's even, in district court, Amherst Council even mentioned having to sit on the judge's lap because they could order the same ticket, and Claim 5 prevents that from happening. And by using the claimed applications in 4 and 5, the burden on the network is minimized. That is patent eligible subject matter. Cooperative Entertainment tells us that when you improve the functioning of the network, it's patent eligible. And, Your Honor, you have to look at the time period. Berkheimer says, whether something is routine, conventional, or well understood to those of ordinary skill in the art is a question of fact. You can't use today's technology to think about what improved technology got done. So can you just, just to help me follow your argument, can you show me, tell me in the spec, where the spec differentiates the reservation and the ticketing applications and where it talks about them? So the spec specifically talks about the reservations at column 2, lines 42 to 43. There's more detail at column 5, starting at, if you want specifically, for the reflective technology, it's column 5, lines 34 to 40, and column 12, lines 51 to 56. Now, to you and me looking at this, this might not mean much. So everything you've just cited, which is really quite a, not that many lines to read, that's what you're saying is the difference, that why this is, this is your technological advance that was associated with the ticketing application and the reservation application that didn't go beyond claim 1? So for the combination of the three elements, it starts at column 5, line, about line 17, all the way to line 40. But again, like to you judges up there, to me as an attorney, to all the attorneys and people sitting in the room, these claims don't look like much. But you have to look at it from one of ordinary skill in the art. And Dr. Valerity provided what was one of ordinary skill in the art at paragraph 17 to 19, found in APPX 7648. Dr. Valerity's declaration is unrebutted. There's been no challenge to it. We have the defendant saying that he didn't discuss the claims, but then in their response, in their answering brief at page 28, they say Dr. Valerity has three categories of opinions. One, how claims 4 and 5 differ from claim 1, how claims 4 and 5 solve technological problems, and three, the purported inventive concepts of claims 4 and 5. That alone right there confirms the district court got it wrong. The district court should have looked at the expert declaration, should have looked at the facts and lay it most favorable to Amaranth. It did look at the declaration. Footnote 1 of the district court's opinion rejects it because it says it suffers from the same flaw, i.e. it's not based on the language of the claim. But that's wrong. Even the defendants say that Dr. Valerity discussed it in the three points I just mentioned where they say that on page 28 of their answering brief. So if you were to look at paragraphs 50 or 51 to 100, that's all discussions of claims 4 and 5. More specifically, how the claims solve technological problems at paragraphs 51 and 54 to 58. The inventive concepts of claim 4 that I mentioned are at paragraphs 72 to 82. How claim 5 overcomes technical problems is at paragraphs 53 to 56 and 84 to 85. Claim 5's inventive concepts are at 53 to 56 and 84 to 85. And Dr. Valerity discussed the technical requirements and the pseudocode that he was able to create from the claims and specification for claims 4 at paragraphs 72 to 82 and claim 5, 90 to 100. He also discussed the problems the prior art had with docketing handholds at 81 to 84. And, Your Honors, I'm in my rebuttal time right now, so I'd like to sit unless you have any additional questions for right now. Okay. Mr. Franklin. Thank you, Your Honors. May it please the Court, Jonathan Franklin on behalf of all of the defendant appellees. I'd like to refocus the Court. I think this is not a difficult appeal, and some of Your Honors' questions make that clear, I think. Judge Hughes, the answer is it's correct. These are field-of-use limitations on an unpatentable claim. Claims 4 and 5 do nothing, as the District Court found correctly, but add field-of-use limitations to a Claim 1, which this Court held in the 2019 Domino's Appeal, was unpatentable. The language of the claims, which is where the law says one must look for the inventive concepts, says that Claims 4 and 5 simply claim the method of Claim 1, which we now know is unpatentable, as applied to reservations and ticketing applications, respectively. And, Judge Dyke, you are correct. The question then is, is there anything inventive about those things that would distinguish the independent claim from which they depend? And the answer is no, as a matter of law, because they are just field-of-use restrictions. They just narrow Claim 1 to certain applications. And going all the way back to Bilski, that does not allow you to find... What about the citations he gave to the specifications? That's what I was just going to get to, Judge Bruss. All of the citations to the specifications actually support the District Court's decisions because they make clear that the only two things that are actually in the specification that he referred to are single point of entry and equilibrium. And if one looks at the specifications, the specification makes clear that those terms apply to all hospitality applications covered by the invention, not just reservations and ticketing. And you can see that in column 2, lines 31 to 41, a single point of entry for all hospitality applications to communicate with each other wirelessly has been unavailable. And then it says, further down, it mentions equilibrium. And then it says, for example, and it lists reservation as an example of that. And the same thing you can see on column 5, 29 to 36. A single point of entry works to keep all wireless handheld devices and linked webs in sync. And then it says, for example. So you end up with the answer to Judge Dyke's question, which is, what is different about these than claim 1? And the answer is nothing. The patent makes clear that all of the applications it covers involve a single point of entry and equilibrium. There is actually nothing in the specification that says anything about reflective routing, which is the third thing that he mentioned. That is in their expert's declaration, but that is just like this court's decision in Dominos, where the court held that the expert declaration added nothing to the patentability analysis because it went to unclaimed features. And there is nothing claimed about reflective routing anywhere in the specification. So at the end of the day, we have a really quite simple case that claims 4 and 5 are field of use restrictions, technological limitations on the claim 1, which the court already knows is unpatentable. And I would also point the court to its own decision in the 2019 Dominos appeal, where the court found every dependent claim that it considered to be equally unpatentable as all of the independent claims that it considered. And many of those dependent claims had much more in them than these ones. I think the most pertinent one that the court looked at would be claim 5, which simply claims the method of claim 1, wherein, excuse me, not 5, claim 6, where the method of claim 1, in which the computing device is a smartphone, and the court held that was unpatentable just by claim 1. So I didn't hear anything on the second issue. I don't know if the court would like me to discuss the not adding claims 2 and 12. That's an abuse of discretion standard, and we don't think that this court abuses discretion on that either. So whatever, again, the court's views may be on the first appeal that we just heard, I want to emphasize this appeal is not a difficult one. They persisted in arguing that simple field use limitations on an unpatentable claim are themselves somehow rendering it an inventive concept. The law is crystal clear that that is not true, and the judge's decisions should be affirmed. Okay, thank you, Mr. Kreisman. Mr. Weinblatt, you have a few minutes here. I want to start off by saying under Ninth Circuit law, under Animal Legal Defense Fund versus U.S. Food and Drug Administration, where a district court has made factual determinations, summary judgment is inappropriate. That's the standard to be applied. What's the factual determination? The district court held that the differences between food ordering and ticketing reservations and reservations are illusory. In order to make the statement that it's illusory, that's a fact-finding. And if you're going to say that it's not a fact-finding, then he's judging the credibility of Dr. Valeri in his declaration, and that goes against Supreme Court precedent of Anderson v. Liberty Lobby, which says a district court can't make credibility determinations when deciding summary judgment, and it can't weigh evidence. Those are jury functions. Also for the standard for summary judgment, would a reasonable jury fine for the non-movement based on the record? Here you have Dr. Valeri's unrebutted declaration that discusses what the claims mean to one of ordinary skill in the art and how it has an inventive concept. A reasonable jury can believe that and fine for amorant. That is sufficient to reverse the district court's decision, vacate it, and remand the district court's opinion in order for the district court to apply the correct burden of proof and law. And I want to... Something that should be easy, and I should know this, but is the attorney's fees case, did that include fees that related to this particular appeal, or that was all before that? No, it was as far as I know, since that's not the appeal that I'm dealing with, that was Domino's. Claims 4 and 5 were never asserted against Domino's. Okay, so it's different. So an overarching question in this appeal is, who determines what the language in a patent specification and the claims mean? You just heard my colleague say that it just mentions routing, but doesn't mention... I'm sorry, it mentions reflection, but doesn't mention reflective routing. Well, it doesn't matter what we as attorneys think. It matters what one of ordinary skill in the art would know when reading the specification and the claims. And last, I'd like to end with, in the appellee's briefs, they consistently refer to the claims as method claims. These are not method claims. These are system claims. And the applications are part of the architecture of the system, and they improve the network by reducing overloading of the system, and as such, it's patent-eligible subject matter. Do your honors have any questions? Okay, I think we're out of time. Thank you. All right, thank you, Your Honor.